[No. 11832–7–II. Division Two. December 18, 1989.]

THE STATE OF WASHINGTON, *on the Relation of Esther Ray Dean,* ET AL, *Respondent,* BETTY RAY DEAN, *Statutory Party,* v. RICHARD A. DEAN, *Appellant.*

378

R. *Wayne Torneby, Jr.*, and *Springer, Norman & Workman*, for appellant.

*C.C. Bridgewater, Jr., Prosecuting Attorney*, and *Jolene D. Sell, Deputy*, for respondent.

*Ann C. Mottet*, as guardian ad litem.

ALEXANDER, C.J.—Richard J. Dean appeals a judgment of the Cowlitz County Superior Court declaring him to be the father of twin girls, Esther Ray Dean and Ellen Ray Dean, and ordering him to pay child support. He alleges that this paternity action is barred by principles of res judicata and collateral estoppel. Alternatively he argues that either laches or the interests of public policy preclude the maintenance of the paternity action. We affirm the trial court.

Betty R. Dean separated from her then husband, Clifford Swan, in January of 1973. In February of that same year,

while still legally married to Clifford, Betty began dating Richard Dean. In late April or early May, Betty discovered that she was pregnant. Her divorce from Clifford became final on May 25, 1973, and she married Richard 4 days later. Betty and Richard were divorced October 9, 1973. In their divorce proceeding the trial judge found that "[n]o children have been born as issue of this marriage and [Betty] is not pregnant by [Richard]. [Betty] is pregnant by her prior husband, which conception occurred prior to her divorce from her prior husband." The twins, Esther and Ellen, were born to Betty approximately 3 months after the decree of divorce was entered.

In 1978, Betty sought to establish in the divorce action that Richard was the father of the two children. She filed a motion for "Correction of Error, Vacation of Judgment and Trial Setting." The trial court denied the motion on the ground that the issue of paternity had already been decided, and that as a consequence, her effort to prove otherwise was precluded by principles of res judicata.

The State commenced this paternity action 1986 on its own behalf and on behalf of the children, pursuant to the Uniform Parentage Act, RCW 26.26, to establish that Richard is the father of the children and to require him to pay child support for each of the children. At trial, evidence of Richard's paternity was introduced.[1] Based on that evidence the trial court declared Richard to be the father of the children, notwithstanding Richard's argument that the principles of collateral estoppel and res judicata precluded such a determination. Richard was ordered to pay child support in the amount of $200 per month per child, as well as back support accruing from the date the action was commenced.

---

[1]The results of blood tests performed on Betty, Richard, Clifford and the two children were introduced into evidence. These tests indicated that Clifford Swan could not be the father of Esther and Ellen and that Richard was 97.45 percent certain to be their father.

The question we must resolve here is whether this paternity action is barred by principles of collateral estoppel, res judicata, laches or public policy.

## COLLATERAL ESTOPPEL

Collateral estoppel, or issue preclusion, prevents parties from raising anew an issue that has previously been litigated and decided. *Seattle–First Nat'l Bank v. Kawachi,* 91 Wn.2d 223, 226, 588 P.2d 725 (1978). In order for a subsequent action to be barred on the basis of collateral estoppel, the following four questions must *each* be resolved in the affirmative:

> (1) Was the issue decided in the prior adjudication identical with the one presented in the action in question? (2) Was there a final judgment on the merits? (3) Was the party against whom the plea is asserted a party or in privity with a party to the prior adjudication? (4) Will the application of the doctrine not work an injustice on the party against whom the doctrine is to be applied?

*Rains v. State,* 100 Wn.2d 660, 665, 674 P.2d 165 (1983). We focus our attention on the third question and conclude that it cannot be answered affirmatively. Clearly, we do not have the same parties in this proceeding as in the divorce action. The State was not a party to the earlier divorce action and neither were the minor children. Indeed, the children were not yet born. In any case, children of divorcing spouses are not considered parties to a divorce action. *Mallen v. Mallen,* 4 Wn. App. 185, 480 P.2d 219 (1971); *Arneson v. Arneson,* 38 Wn.2d 99, 227 P.2d 1016 (1951).

 Richard, while conceding that the children were not parties to the divorce, responds that they should be precluded from maintaining the action because they were in privity with their mother. We disagree. Privity "is construed strictly to mean parties claiming under the same title. It denotes mutual or successive relationship to the same right or property. . . ." *Owens v. Kuro,* 56 Wn.2d 564, 568, 354 P.2d 696 (1960) (citing *Sodak Distrib. Co. v. Wayne,* 77 S.D. 496, 93 N.W.2d 791, 795 (1958)). In paternity cases, our court has been unwilling to diverge from a

strict construction of privity. *In re Burley,* 33 Wn. App. 629, 640, 658 P.2d 8, *review denied,* 99 Wn.2d 1016 (1983). The justification for a strict construction is simple. Where the parties against whom collateral estoppel is being asserted have had no previous opportunity to raise certain issues, their claim on those issues should not be barred. On the other hand, one whose property interests have already been asserted and litigated by his or her predecessor should be prevented from reasserting and relitigating the same interests.

Richard's privity argument fails because a parent and child do not necessarily hold mutual and successive rights to property and there is no evidence that these children hold such rights. Collateral estoppel should not, therefore, preclude these children from asserting that Richard is their father.

## Res Judicata

The defendant also asserts res judicata as a bar to the paternity action. Res judicata, or claim preclusion, prevents parties to a cause of action from later asserting a claim arising from the same cause of action. *Seattle–First Nat'l Bank,* 91 Wn.2d at 225. Not unlike collateral estoppel, a party may successfully assert res judicata as a bar to a subsequent action only if the party against whom it is being asserted was a party to the prior action. *Rains v. State,* 100 Wn.2d 660, 663, 674 P.2d 165 (1983). *See also* Restatement (Second) of Judgments § 34(3) (1982). Because, as we noted above, Esther, Ellen and the State were not parties to Betty and Richard's divorce action, their claim of paternity should not be barred by principles of res judicata.

## Laches

Richard also alleges that the petitioners' paternity action is barred by laches. This argument cannot be supported by the record. Richard asserts, and the petitioners have not disputed, that the trial court determined the laches issue when it denied Richard's motion to dismiss. He continues

to argue on appeal that he has satisfied the requirements of laches as set forth in *Nettles v. Beckley,* 32 Wn. App. 606, 648 P.2d 508 (1983). The court in that case required three elements for a showing of laches:

"(1) [P]laintiff had knowledge or a reasonable opportunity to discover facts constituting a cause of action; (2) there was an unreasonable delay by plaintiff in commencing the action; and (3) there is damage, prejudice or disadvantage to defendant, or an innocent third party, resulting from the delay."

*Nettles,* 32 Wn. App. at 608.

■ Richard argues that he has been harmed in several ways by the delay of the petitioners. He claims also that he made these arguments to the trial court and that the trial court rejected them. The trial court's order denying his motion for dismissal, and its reason for doing so, however, appear nowhere in the record before this court. More importantly, we have no record of the hearing on Richard's motion and, thus, we have no way of knowing what evidence was presented to the trial court on the laches issue. A party seeking review has the burden of perfecting the record so that the court has before it all evidence relevant to the issue on appeal. RAP 9.2(b); *State v. Rienks,* 46 Wn. App. 537, 544, 731 P.2d 1116 (1987); *Allemeier v. UW,* 42 Wn. App. 465, 472–73, 712 P.2d 306 (1985), *review denied,* 105 Wn.2d 1014 (1986). Matters not in the record will not be considered by the appellate court. *State v. Blight,* 89 Wn.2d 38, 46–47, 569 P.2d 1129 (1977). Because we are unable to review the trial court's order and the evidence presented on the laches issue, we reject Richard's argument.

## PUBLIC POLICY

■ Defendant's final argument is that public policy is best served by preserving the status quo. Richard did not raise this argument at trial, and an appellate court may refuse to review any claim of error that was not raised in the trial court. RAP 2.5. In any case, we disagree with the contention. In our opinion, courts should, as a general principle, be required to make accurate determinations of paternity, even if it is at the expense of the status quo.

While we recognize that in some cases the best interests of the child might be served by preserving the status quo, *McDaniels v. Carlson,* 108 Wn.2d 299, 310–13, 738 P.2d 254 (1987), the interests of the public are distinguishable from those of the child and are much broader in scope. The State's general interest in the welfare of its children and its specific interest in the accurate determination of paternity are, and always have been, compelling. *State v. Meacham,* 93 Wn.2d 735, 737–38, 612 P.2d 795 (1980). Consequently, we do not accept Richard's argument that public policy requires the preservation of the status quo of the family when determinations of paternity are at issue.

The trial court's judgment is affirmed.

REED and WORSWICK, JJ., concur.

Reconsideration denied January 23, 1990.